IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIEL FLOYD and,<br>KELLEY FLOYD,<br><br>          Plaintiff,<br><br>    vs.<br><br>COUNTRYWIDE HOME LOANS, INC.;<br>BAC HOME LOAN SERVICING LP,<br>f/k/a COUNTRYWIDE HOME LOANS<br>SERVICING LP; THORNBURG<br>MORTGAGE SECURITIES TRUST<br>2007-3; THORNBURG MORTGAGE<br>SECURITIES TRUST 2006-6;<br>RECONTRUST COMPANY NA;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>BANK OF AMERICA, N.A.; and DOES<br>1 through 10,<br>                Defendant. | CV 12-79-M-DLC-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATION |

This matter is before the Court on Defendants Countrywide Home Loans,

Inc., ReconTrust Company N.A., Bank of America, N.A.,[1] Thornburg Mortgage

Securities Trust 2007-3, Thornburg Mortgage Securities Trust 2006-6, and

Mortgage Electronic Registration Systems, Inc.'s Fed. R. Civ. P. 12(b)(6) motion

---

[1]Defendants identify Bank of America, N.A. as the successor by merger to
Defendant BAC Home Loan Servicing LP, f/k/a Countrywide Home Loans
Servicing LP.

requesting dismissal of Plaintiffs Daniel and Kelley Floyd's Amended Complaint for failure to state a claim upon which relief can be granted.

For the reasons discussed, the Court recommends that Defendants' motion be granted in part, and denied in part with respect to the Floyds' claims for negligence, for violations of the Consumer Protection Act, for breach of the implied covenant of good faith and fair dealing, and for punitive damages.

## I.    BACKGROUND

Daniel and Kelley Floyd are the principals of the corporate entity, Renascent, Inc.  The Floyds allege that as the principals of Renascent they sought — at some unspecified point in time — to obtain financing from Countrywide Home Loans, Inc. ("Countrywide") for the purchase of certain real property located in Ravalli County, Montana (the "Property").  The Floyds assert Countrywide would not make the loan to Renascent but did make the loan to themselves.  And the Floyds allege that after the original purchase was consummated, Countrywide directed the Floyds to convey title to the Property to Renascent.

The loan was subsequently refinanced on two occasions.  The Floyds allege that on both occasions, Countrywide again advised them it would not make the loan to Renascent, made the loan to the Floyds, and afterwards directed the Floyds

to convey title to the Property to Renascent.

The most recent loan transaction was memorialized in a promissory note and a Deed of Trust, dated July 17, 2006. The Deed of Trust identifies the Floyds as the borrowers, Countrywide as the lender, and Charles J. Peterson as the trustee. It also confusingly identifies Defendant Mortgage Electronic Registration Systems, Inc. as (1) "a nominee for" Countrywide, (2) a beneficiary under the Deed of Trust, and (3) the entity that holds "legal title" to the Property interest the Floyds conveyed in the Deed of Trust. The amount of the debt was $3,000,000.

According to the Floyds, when Renascent subsequently experienced financial difficulties, the Floyds — purportedly as the principals of Renascent — sought to discuss a modification of the loan with the lender. The Floyds allege they contacted the loan servicer, Defendant BAC Home Loan Servicing LP (BAC Home Loan), to obtain the identity of the owner of the loan, but were informed they would have to be in default on the loan before a loan modification would be discussed. At that point, the Floyds allege Renascent defaulted on the loan. The Floyds contend that BAC Home Loan contacted Renascent multiple times after the default, but it would never identify the owner of the debt.

The Floyds allege that, unable to effect a loan modification, they engaged the services of Concierge Auctions, LLC (Concierge) to auction the Property —

an auction they believed would garner a price of between $6,000,000 and $8,000,000.

On May 19, 2010, Defendant ReconTrust Company N.A. (ReconTrust), as the successor trustee, signed the Notice of Trustee's Sale, and filed it with the Ravalli County Clerk and Recorder on May 20, 2010. But, the Floyds claim ReconTrust lacked authority as successor trustee to execute and record the Notice of Trustee's Sale because it had no authority as successor trustee until the Substitution of Trustee document was actually filed with the Ravalli County Clerk and Recorder on May 20, 2010. The Floyds also contend the Notice misrepresented that the Deed of Trust secured a debt owed to Defendant Mortgage Electronic Registration Systems, Inc., instead of Countrywide, and that BAC Home Loan was the owner of the beneficial interest under the Deed of Trust, after it had already transferred its beneficial interest to another entity.

The Floyds assert that the filing of the Notice of Trustee's Sale on May 20, 2010, prompted Concierge to cancel the auction of the Property which resulted in Renascent having to pay Concierge its auctioneer's fee in the amount of $50,000. And the Floyds allege the cancellation of the auction caused Renascent to file for Chapter 11 bankruptcy protection.

Defendant Thornburg Mortgage Securities Trust 2007-3 (Thornburg 2007-

3) filed a Proof of Claim in Renascent's bankruptcy action. Thornburg 2007-3 claimed it owned "the Promissory Note and the Deed of Trust." In its Proof of Claim it asserted the value of the Property was $6,500,000.

On July 8, 2011, Defendant Bank of America, NA sent the Floyds a debt collection notice. In that notice Bank of America identified Wells Fargo/ Thornburg Mortgage Securities Trust 2006-6 as the owner of the debt.

Based on all of the foregoing, the Floyds allege generally that all Defendants failed to act in accordance with Montana and federal law. They advance eight causes of action in their Amended Complaint for negligence, breach of contract, negligent misrepresentation, deceit, constructive fraud, violations of the Montana Consumer Protection Act, violations of the Montana Small Tract Financing Act, and for punitive damages.

## II.   APPLICABLE LAW

### A.   Fed. R. Civ. P. 12(b)(6) - Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal where the allegations of a pleading "fail[] to state a claim upon which relief can be granted." A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental*

*Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). In addressing a Rule 12(b)(6) challenge the court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Rule 8). Consequently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate with "probability", but it requires "more than a sheer possibility that a defendant has acted unlawfully[,]" and factual allegations "that are 'merely consistent with' a defendant's liability" do not cross the line between possibility and plausibility. *Id*.

Finally, the court's review on a motion filed under Rule 12(b)(6) is generally limited to the matters set forth in the complaint. *Lee v. City of Los*

*Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Rule 12(b)(6), however, permits the court to consider certain limited materials beyond the face of the complaint without converting the motion into one for summary judgment. *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010). A court may consider, and assume as true, evidence on which the complaint "'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted).

In their Amended Complaint, the Floyds refer to several loan transaction documents that are not attached to their pleading. They rely upon the Deed of Trust, the amended promissory note (the Fixed/Adjustable Rate Rider (dkt. 42-1 at 13 of 17)), the Notice of Trustee's Sale, and the Substitution of Trustee. The parties stipulated to the authenticity of the transactional documents including "the Note" and the documents filed with the Ravalli County Clerk and Recorder. Dkt. 34 at 4. Therefore, to the extent necessary, the Court will rely on the content of those documents without converting Defendants' motion into one for summary

judgment.

**B.**     **Application of Montana Law**

The Court's jurisdiction over this action is founded upon diversity of citizenship. 28 U.S.C. § 1332(a). Therefore, the Court will apply the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

"The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). Federal courts "are bound by the pronouncements of the state's highest court on applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (quoting *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)).

When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor*, 265 F.3d at 939 (citation omitted). The court should also rely

on persuasive authorities, including treatises and decisions from other

jurisdictions, as guidance. *Strother v. Southern California Permanente Medical

Group*, 79 F.3d 859, 865 (9th Cir. 1996).

## III.    DISCUSSION

### A.    Small Tract Financing Act of Montana

The Floyds advance claims predicated upon all Defendants' alleged

violations of the Small Tract Financing Act of Montana (the Financing Act),

Mont. Code Ann. § 71-1-301 et seq., as follows:

(1)  Defendants failed to record all assignments of the beneficiary's interest
in the Deed of Trust;

(2)  Defendants' Notice of Trustee's Sale failed to accurately identify the
beneficiary under the Deed of Trust;

(3)  ReconTrust was not duly appointed as a successor trustee until the day
after it signed and recorded its Notice of Trustee's Sale and, therefore, did
not have authority to sign and record the Notice;

(4)  The Notice of Trustee's Sale inaccurately represented that BAC Home
Loan held the beneficial interest under the Deed of Trust because BAC
Home Loan had assigned that interest before the Notice was recorded;

(5)  The Notice of Trustee's Sale failed to identify Thornburg 2007-3 as the
entity that held the beneficial interest in the Deed of Trust;

(6)  The Notice of Trustee's Sale failed to identify Countrywide as the
original beneficiary under the Deed of Trust;

(7)  The Deed of Trust unlawfully appointed Mortgage Electronic
Registration Systems, Inc. as both the beneficiary and the trustee which is

prohibited by the Financing Act;

(8) Mortgage Electronic Registration Systems, Inc. unlawfully transferred the beneficial interest under the Deed of Trust, an interest that legally it did not hold and could not transfer;

(9) Mortgage Electronic Registration Systems, Inc. unlawfully acted in its own name when it only had authority, if any, to act as Countrywide's agent; and

(10) BAC Home Loan executed a Substitution of Trustee document, dated May 19, 2010, and recorded May 20, 2010 (dkt. 46-3), that was not executed and acknowledged by all beneficiaries identified in the Deed of Trust, and which did not identify the original parties to the Deed of Trust in violation of the Financing Act at Mont. Code Ann. § 71-1-306(2).

Defendants move to dismiss the Floyds' claims under the Financing Act. In response, the Floyds argue that the Financing Act provides grounds for implied private rights of action for the foregoing alleged violations. The Court disagrees.

The issue of whether a state statute implicitly creates a private cause of action requires the court to consider the rules of statutory construction. *Wombold v. Associates Financial Services Co. of Montana, Inc.*, 104 P.3d 1080, 1085 (Mont. 2004), overruled on other grounds by *Essex Ins. Co. v. Moose's Saloon, Inc.*, 166 P.3d 451, 456 n.3 (Mont. 2007). The rules pose the following questions:

(1) Is the interpretation consistent with the statute as a whole? (2) Does the interpretation reflect the intent of the legislature considering the plain language of the statute? (3) Is the interpretation reasonable so as to avoid absurd results? and (4) Has the agency charged with the administration of the statute placed a construction on the Statute?

*Wombold*, 104 P.3d at 1085.  Additionally, the court should consider the nature of the legislation, whether the statute was enacted for the protective and beneficent purpose vindicated by the proposed private right of action, and whether the provisions of the statute would be meaningless without the implied remedy of a private right of action.  *Id*. at 1085-86.

As applied in this case, the rules of statutory construction compel the conclusion that the Financing Act does not allow any implied private right of action other than those expressly authorized in the Act.[2]

The legislative purpose behind the Financing Act was to "reduce the strain on the financing of improvements upon small tracts" of land, and to simplify lending with respect to small tracts without subjecting the transaction to the burdens of traditional mortgage law.  *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 172 P.3d 116, 120 (Mont. 2007).  The Financing Act "struck a compromise" by eliminating a debtor's rights to possession and redemption following a default, and by eliminated the lender's right to a deficiency judgment.  *Id*.  Debtors were also given a pre-sale right to cure a default.  Mont. Code Ann. § 71-1-312; *Knucklehead Land Co., Inc.*, 172 P.3d at 121.

---

[2]*See e.g.* Mont. Code Ann. §§ 71-1-307(1) & (3) and 71-1-312(4) (expressly permitting causes of action for liability in circumstances not applicable to the facts of this case).

With respect to trust indenture trustees, the Financing Act permits a trustee to pursue non-judicial foreclose on property by advertisement and sale, and it "streamlined and reduced obstacles to the foreclosure process." *Knucklehead Land Co., Inc.*, 172 P.3d at 121. Consequently, in *Knucklehead Land Co., Inc.*, the Montana Supreme Court refused to impose additional duties upon a trustee, other than the duties imposed under the Financing Act, since the imposition of additional duties would "defeat the purpose of the Financing Act by complicating its streamlined process for foreclosure[.]" *Id*.

Applying the rules of statutory construction and considering the other pertinent factors, the Court concludes the Financing Act does not permit the implied private rights of action as advocated by the Floyds. The imposition of additional, complicating private rights of action would be inconsistent with the streamlined purpose and intent of the Financing Act. Since the Financing Act strikes a compromise between borrowers and lenders' rights and obligations, the provisions of the Financing Act which the Floyds allege Defendants violated are not rendered meaningless if the Court declines to recognize the implied private rights of action as proposed by the Floyds. Moreover, where a state court has not yet recognized a new cause of action for the imposition of liability, and where the plaintiffs have chosen to file their action in federal court, the federal court is "not

entitled to trailblazing initiatives under [state law]." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9ᵗʰ Cir. 2011) (quoting *Ed Peters Jewelry Co. v. C & J Jewelry Co., Inc.*, 124 F.3d 252, 262-63 (1ˢᵗ Cir. 1997)).

### B.    <u>Negligence</u>

The Floyds assert claims for negligence based on Defendants' conduct in allegedly failing to respond to the Floyds' inquiries as to the identity of the owner of the debt, and for Defendants' conduct in engaging in foreclosure proceedings. The Floyds allege Defendants were obligated to:

> (1) provide complete and accurate information in response to Plaintiffs' inquiries; (2) know and correctly identify the owner of the loan; and (3) foreclose only when contractually and legal [sic] entitled to do so, and then only in a manner that complied with the terms of the Deed of Trust and all applicable federal and state laws.

Dkt. 38 at ¶ 30.  And they assert the Defendants' alleged failure to comply with these duties caused the Floyds to suffer damages, including the cancellation of the auction of the Property that would have produced sufficient funds to fully satisfy the promissory note.

A cause of action for negligence requires the plaintiff to prove four essential elements:  "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted." *Peterson v. Eichhorn*, 189 P.3d 615,

620-21 (Mont. 2008).

Defendants move to dismiss the Floyds' claims for negligence on the sole ground that the Floyds' allegations do not identify and invoke any legal duty that they owed to the Floyds. But this Court has recently considered the issue of whether beneficiaries and trustees are subject to a duty of ordinary care in the conduct of non-judicial real estate foreclosure proceedings under the provisions of the Financing Act. *Joseph v. Bank of America, N.A.*, 2012 WL 6100037 (D. Mont. 2012). In *Joseph*, Chief Judge Richard F. Cebull concluded that beneficiaries and trustees have a common law duty of ordinary care as imposed under Mont. Code Ann. § 27-1-701. *Joseph*, 2012 WL 6100037 at 3-4 (citing *Mattingly v. First Bank of Lincoln*, 947 P.2d 66, 70 (Mont. 1997)). Furthermore, the Court concluded that, although the Financing Act does not provide a basis for any implied private right of action, a negligence cause of action may properly be predicated upon the obligations imposed under the Financing Act. *Joseph*, at 4. Specifically, the Court found that a negligence claim predicated upon the failure of a trustee to give proper notice of the trustee's sale and hold a public auction pursuant to the Financing Act is sufficient to state a plausible cause of action for negligence. *Id*.

Here, the Floyds have similarly advanced plausible negligence claims based

upon both the common law and the Financing Act.  The Floyds sufficiently allege

Defendants breached their duty of ordinary care by failing to comply with state

law and the Financing Act in foreclosing on the Property without the authority to

do so.  Specifically, under the Financing Act the trustee is obligated to identify

both the beneficiary and the trustee in the notice of sale.  Mont. Code Ann. § 71-1-

313(3).  Here, the Floyds allege Defendants' Notice of Trustee's Sale

misidentified BAC Home Loan as the beneficiary under the Deed of Trust when

BAC Home Loan had, in fact, previously assigned its beneficial interest to another

party.  The Notice also misidentified Mortgage Electronic Registration Systems,

Inc. as the beneficiary under the Deed of Trust.  Finally, the Notice did not

identify either Countrywide as the original beneficiary, or Thornburg 2007-3 as

the then current beneficiary.

Additionally, the Financing Act authorizes only the trustee to proceed with

a non-judicial foreclosure.  Mont. Code Ann. § 71-1-313(3).  The Floyds

sufficiently allege that Defendants did not have proper legal authority as a trustee

to foreclose on the indenture as of the date of the Notice of Trustee's Sale.

Whether the Floyds can ultimately prevail on a claim of negligence by establishing

the breach of a duty — imposed by either the common law or the Financing Act —

and causation of an injury remains to be seen.

15

## C.     Montana Consumer Protection Act

Defendants move to dismiss the Floyds' claims under the Montana

Consumer Protection Act, Mont. Code Ann. § 30-14-101 et seq.  The Court finds,

however, that the Floyds have sufficiently pled a cause of action under that Act.

The Consumer Protection Act declares that "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce are unlawful."  Mont. Code Ann. § 30-14-103.  For purposes of section

30-14-103, an unlawful, "unfair act or practice is one which offends established

public policy and which is either immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers."  *Rohrer v. Knudson*, 203 P.3d 759, 764

(Mont. 2009).  Any consumer who sustains a loss as a result of conduct that is

unlawful may pursue a cause of action for relief.  Mont. Code Ann. § 30-14-133.

A "consumer" under the Act is a "person who purchases or leases goods,

services, real property, or information primarily for personal, family, or household

purposes."  Mont. Code Ann. § 30-14-102(1).  The business of consumer and real

estate lending "is the sale of a service" and constitutes a trade or commerce

covered by sections 30-14-102(1), (8) and 30-14-103.  *Baird v. Northwest Bank*,

843 P.2d 327, 333 (Mont. 1992) (citing *In re Smith*, 866 F.2d 576, 582 (3rd Cir.

1989)).

The Floyds' allegations state a claim under the Consumer Protection Act. They allege Renascent transferred the Property to the Floyds for purposes of applying for, and securing the real estate financing. Dkt. 38 at ¶ 11. The Floyds executed the Deed of Trust and the Fixed/Adjustable Rate Rider (promissory note). Additionally, the Floyds allege they "intended to use, and did use, the Property primarily for personal and residential/household purposes." Dkt. 38 at ¶ 43. Therefore, the Floyds engaged Defendants' real estate lending services for consumer purposes.

The Floyds allege that Defendants' conduct in foreclosing on the Floyds' Property was "unfair and deceptive." Dkt. 38 at ¶¶ 44-45; Mont. Code Ann. § 30-14-103. Further, the Floyds allege Defendant's conduct in attempting to foreclose on the Property "was unethical, unscrupulous and substantially injurious to Plaintiffs." Dkt. 38 at ¶ 44. Finally, the Floyds allege Defendants' conduct caused them to sustain damages. Dkt. 38 at ¶ 45; Mont. Code Ann. § 30-14-133.

Based on the foregoing, and for purposes of Defendants' Fed. R. Civ. P. 12(b)(6) motion, the Court finds that the Floyds' allegations at least state a plausible claim for relief under the Consumer Protection Act.

**D.**     **<u>Negligent Misrepresentation, Deceit, and Constructive Fraud</u>**

The Floyds advance separate claims for negligent misrepresentation, deceit,

and constructive fraud.  In support of all three claims, the Floyds allege

Defendants misrepresented to the Floyds, and misled the Floyds to believe, that

Defendants held beneficial and legal interests in the Deed of Trust, that they had

complied with all requirements under the Deed of Trust, federal law, and state law,

and that they possessed a current and enforceable right to foreclose on the

Property.

In support of their separate claim of deceit, the Floyds allege Defendants

either failed to identify the entity that held the beneficial interest in the Deed of

Trust, or affirmatively misrepresented the name of that entity, all in violation of

Mont. Code Ann. § 27-1-712 (imposing "[l]iability for damages for deceit").

Defendants move to dismiss these three causes of action arguing, in part,

that the Floyds' pleading fails to factually and plausibly allege the Floyds relied on

any purported misrepresentation to their detriment.  For the reasons discussed, the

Court agrees.

The success of each of the Floyds' three claims requires that the Floyds

detrimentally relied upon Defendants' representation.  A viable claim for negligent

misrepresentation consists of six elements, and the fifth and sixth elements require

that:

> 5) the plaintiff must have been unaware of the falsity of the representation;
> it <u>must have acted in reliance upon the truth of the representation</u>, and it

must have been justified in relying on the representation; [and] 6) the plaintiff, <u>as a result of his or her reliance, sustained damage</u>.

*Kurtzenacker v. Davis Surveying, Inc.*, 278 P.3d 1002, 1007-8 (Mont. 2012)

(emphasis added) (citing *Deichl v. Savage*, 216 P.3d 749, 753 (Mont. 2009)).

Similarly, "a prima facie case of constructive fraud" requires facts pled to support all eight elements of the claim.[3] Two of those elements require "the [plaintiff's] reliance upon the truth of the [defendant's] representation; [...] and the [plaintiff's] consequent and proximate injury or damage caused by reliance on the representation." *White v. Longley*, 244 P.3d 753, 759 (Mont. 2010).[4]

---

[3]Constructive fraud is statutorily defined in Montana as:

(1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or

(2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Mont. Code Ann. § 28–2–406.

[4]The elements of a claim for constructive fraud are similar to the elements of a claim for fraud. *Town of Geraldine v. Montana Municipal Ins. Authority*, 198 P.3d 796, 801 (Mont. 2008). The nine elements of fraud are as follows:

(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge that it is false, (5) the speaker's intent that the representation will be relied upon by the hearer to his detriment, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance upon its truth, (8) the hearer's right to rely upon it, and (9) the hearer's consequent injury as the

Finally, a viable claim for deceit requires allegations describing the plaintiff's affirmative actions, or conduct in forgoing opportunities, to the detriment of the plaintiff that were undertaken in reliance upon the defendant's deceitful representation. Statutory law in Montana imposes liability against a defendant for damages caused by the defendant's deceit as follows:

> (1) One who willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk is liable for any damage that the person suffers.

Mont. Code Ann. § 27-1-712. *See also Boyne USA, Inc. v. Spanish Peaks Development, LLC*, 292 P.3d 432, 447 (Mont. 2013) (defining deceit). Under Montana law, a claim for deceit equates to a claim for fraud which requires allegations of detrimental reliance. *See* supra, n.4, and *Pfau v. Mortenson*, 858 F. Supp. 2d 1150, 1158 (D. Mont. 2012) (construing Montana law). Thus, liability for deceit arises when a plaintiff sustains damages as a result of having altered his position to his detriment based on his reliance upon the defendant's deceit. *Boyne*

---

result of his reliance.

*In re Adoption of S.R.T.*, 260 P.3d 177, 180 (Mont. 2011) (citing *Durbin v. Ross*, 916 P.2d 758, 762 (Mont. 1996)). The only distinction is that in a claim for constructive fraud "a plaintiff need not prove the fifth element [of fraud] relating to intent to deceive or dishonesty of purpose." *Town of Geraldine*, 198 P.3d at 801 (quoting *State ex rel. State Compensation Mutual Ins. Fund v. Berg*, 927 P.2d 975, 983 (Mont. 1996)).

*USA, Inc.*, at 447-49.

In their response brief, the Floyds attempt to point to allegations demonstrating their detrimental reliance. They argue that "Defendants' representations that they owned the loan and had the right to foreclose dictated Floyds' course of action, including trying to auction the property and ultimately taking Renascent into bankruptcy." Dkt. 46 at 32. The Floyds' arguments, however, are inconsistent with the allegations in their pleading.

The Floyds allege Defendants misidentified, or failed to accurately identify, the owner of the debt or beneficial interest in the Deed of Trust. The Floyds then allege that Renascent decided to sell the Property at auction because Renascent was "[u]nable to identify the owner of the debt or anyone willing to work on a loan modification[.]" Dkt. 38 at ¶ 19. But, the Floyds' factual allegations do not plausibly establish that the decision to sell the Property constituted detrimental reliance. The factual allegations indicate the decision to sell the Property would have been to their benefit, not their detriment, because the sale would have allowed the Floyds to pay off the debt in full. *See* Dkt. 38 at ¶ 49. Furthermore, the auction never occurred. Thus, the unfulfilled decision to sell the Property did not alter their position to their detriment.

The Court recognizes that the Floyds allege they had to pay the auctioneer,

Concierge, $50,000 for its services even though the auction was never held.  But, as discussed below, the reason the auction was not held was due, by the Floyds' own admission, to a decision made by Concierge, not because of some action the Floyds took to their detriment in reliance upon Defendants' prior inaccurate representations as to the owner of the debt.

Next, with respect to the Floyds' contention that Renascent was forced to file for bankruptcy due to some representation made by Defendants, the allegations in their Amended Complaint establish otherwise.  Specifically, the Floyds allege Renascent sought "Chapter 11 bankruptcy protection" because the auction to sell the Property was cancelled.  Dkt. 38 at ¶ 23.  Furthermore, they allege that Concierge, and not the Floyds, cancelled the auction because of the Notice of Trustee's Sale.  *Id*.  Therefore, as alleged in the Amended Complaint, it was Concierge's conduct in cancelling the auction, not the Floyds' reliance upon some misrepresentation, that caused the Floyds to take actions to seek bankruptcy protection for Renascent.

In short, the Floyds have failed to plead sufficient facts establishing it is plausible that the Floyds took some action, or withheld from taking some action, to their detriment, directly in reliance upon one of Defendants' representations. The Floyds' three claims for misrepresentations should be dismissed.

### E. Breach of Contract

The Floyds assert a claim for breach of contract.  They allege Defendants were contractually obligated under the Deed of Trust to:  (1) provide information as requested by the Floyds, (2) "notify [the Floyds] of changes in beneficial or legal ownership," (3) "act in good faith," and (4) comply with all applicable laws. Dkt. 38 at ¶ 33.  Defendants move to dismiss the Floyds' breach of contract claim on various grounds.

As a threshold matter, Defendants contend the Floyds have no enforceable rights in the Deed of Trust because after the loan transaction the Floyds transferred the Property back to Renascent.  Also, Defendants contend the Floyds have not identified any provision in the Deed of Trust that Defendants breached.  Finally, Defendants argue the Floyds have failed to plead sufficient facts to plausibly state a claim for the breach of the implied covenant of good faith and fair dealing.

### 1. Real Party in Interest

Defendants assert that the Floyds are not the real parties in interest in this action and, therefore, have no legally enforceable contractual right under the Deed of Trust.  They point out the Floyds have alleged that at all relevant times Renascent owned the Property, and the Floyds transferred the Property back to Renascent after each real estate financing transaction.  In reliance upon the terms

of paragraph 13 of the Deed of Trust, Defendants argue that Renascent "obtain[ed] all of Borrower's rights and benefits under" the Deed of Trust based on the transfer of the Property to Renascent. Dkt. 42-1 at 8 of 17, ¶ 13. Thus, Defendants argue that Renascent — not the Floyds — is the real party in interest. The Defendants' argument fails.

The Floyds held title to the Property at the time of the subject loan transaction, they signed the Deed of Trust dated July 17, 2006, and they signed the Fixed/Adjustable Rate Rider dated July 17, 2006.

Further, even though the Floyds transferred the Property to Renascent, paragraph 13 of the Deed of Trust did not automatically effect a transfer of all of the Floyds' "rights and benefits" in the Deed of Trust to Renascent. The Deed of Trust defines a "Successor in Interest of Borrower" as "any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument[, i.e. Deed of Trust]." Dkt. 42-1 at 2 of 17. But the "rights and benefits" under the Deed of Trust transfer to the Successor in Interest of Borrower only if the Successor (1) "assumes Borrower's obligations under this Security Instrument in writing," and (2) "is approved by Lender[.]" Dkt. 42-1 at 8 of 17, ¶ 13.

Here, the Floyds do not allege that Renascent agreed, in writing, to assume

the Floyds' obligations under the Deed of Trust, and they do not allege that Defendants approved of Renascent as a Successor in Interest of Borrower. Consequently, as pled in the Amended Complaint, the Floyds remain as the real parties in interest as parties to the Deed of Trust who retained the rights and benefits provided under the Deed of Trust.

## 2. Rights or Duties Breached Under the Deed of Trust

The Floyds' breach of contract claims are expressly predicated upon breaches of the Deed of Trust. Dkt. 38 at ¶ 33. The Defendants move to dismiss the claims on the ground that the Floyds have not pled any facts identifying any contractual provision of the Deed of Trust that supports the contractual duties alleged by the Floyds. The Court agrees.

To state a cause of action for breach of contract, a plaintiff must plead facts disclosing "a valid agreement, a right in the plaintiff and a breach by the defendant." *Union Interchange, Inc. v. Allen*, 370 P.2d 492, 496 (Mont. 1962 (citation and quotation omitted). Consequently, the Floyds' allegations must identify a contractual right they have to the performance of the duties they allege the Defendants breached. The Court finds that the Floyds' allegations fail to do so.

The Floyds' allegations do not identify any provision of the Deed of Trust

that plausibly supports the contractual breaches as alleged by the Floyds. The

allegations do not identify any provision of the Deed of Trust that required the

Defendants to provide the information requested by the Floyds. Also, the Deed of

Trust expressly provides that "[t]he Note or a partial interest in the Note (together

with this Security Instrument) can be sold one or more times without prior notice

to Borrower." Dkt. 42-1 at 9 of 17, ¶ 20. Therefore, contrary to the Floyds'

allegations, the provisions of the Deed of Trust did not obligate Defendants to

answer the Floyds' inquiries, or to notify the Floyds of any changes in beneficial

or legal ownership of the "Lender's" interest in the Deed of Trust.

### 3.    Implied Covenant of Good Faith and Fair Dealing

As a matter of law, every enforceable contract "contains an implied

covenant of good faith and fair dealing." *Knucklehead Land Co., Inc. v. Accutitle,*

*Inc.*, 172 P.3d 116, 121 (Mont. 2007) (citation and quotation omitted). "[T]he

covenant is a mutual promise implied in every contract that the parties will deal

with each other in good faith, and not attempt to deprive the other party of the

benefits of the contract through dishonesty or abuse of discretion in performance."

*Phelps v. Frampton*, 170 P.3d 474, 482 (Mont. 2007) (citation and quotation

omitted). The standard of conduct imposed by the implied covenant is "honesty in

fact and the observance of reasonable commercial standards of fair dealing in the

26

trade." *McCoy v. First Citizens Bank*, 148 P.3d 677, 681 (Mont. 2006) (quoting

*Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990)).  A plaintiff need not

first establish a breach of an express provision of the contract as a prerequisite to a

claim for a breach of the implied covenant.  *Id*.

Defendants move to dismiss the Floyds' claim for a breach of the implied

covenant of good faith on the basis the Floyds have not pled any facts suggesting

it is plausible that Defendants breached the covenant under the standards

identified above.  The Court disagrees.

The Floyds allege Defendants did not accurately and honestly identify the

owner of the beneficial interest under the Deed of Trust in response to the Floyds'

requests for that information.  They allege that BAC Home Loan provided

conflicting information and misinformation as to the identity of the owner of the

beneficial interest.  At one point, for example, BAC Home Loan inaccurately

identified Wells Fargo as the "investor," but that Wells Fargo informed the Floyds

that it did not own any loan secured by the Floyds' Property.  The Floyds thus

allege that the Defendants failed to check the facts and to "ensure that they were

acting in a reasonable, good faith, and appropriate manner[.]"  Dkt. 38 at ¶ 26.

These allegations plausibly indicate that Defendants did not comply with the

standard of "honesty in fact and the observance of reasonable commercial

standards of fair dealing in the trade."

**F.**    **Punitive Damages**

Defendants move to dismiss the Floyds' claim for punitive damages due, in part, to the lack of factual support plead in the Floyds' Amended Complaint. At this stage of the proceedings, however, the Court cannot agree that the punitive damage claim is not plausible.

Under Montana law, an award of punitive damages may be imposed for conduct that constitutes actual malice. Mont. Code Ann. § 27-1-221(1). Actual malice exists when a:

> defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
> > (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
> >
> > (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Mont. Code Ann. § 27-1-221(2).

The Floyds have alleged punitive damages are warranted based on Defendants' alleged actual malice. In particular, the Floyds allege they told Defendants they intended to sell the Property which would allow them to pay the debt, but despite that knowledge Defendants nonetheless deliberately proceeded to engaged in the foreclosure process, in violation of certain requirements of the

28

Financing Act, intentionally disregarding, or with indifference to, the high probability of financial harm to the Floyds.  Dkt. 38 at ¶¶ 49-51.  From a pleading standpoint, the allegations sufficiently establish it is at least plausible that the Floyds could prove that Defendants acted with actual malice.

### G.    Individual Defendants

Defendants move to dismiss five of the individual Defendants because the Floyds have not expressly pled facts as to any specific act or omission committed by the five Defendants on which liability could be imposed as required under Fed. R. Civ. P. 8(a)(2) and 12(b)(6).  The five Defendants asserting their right to dismissal are:  (1) Countrywide Home Loans, Inc., (2) Thornburg Mortgage Securities Trust 2007-3, (3) Thornburg Mortgage Securities Trust 2006-6, (4) Mortgage Electronic Registration Systems, Inc., and (5) Bank of America, N.A. (identified by Defendants as the successor by merger to Defendant BAC Home Loan Servicing LP, f/k/a Countrywide Home Loans Servicing LP).

With respect to Countrywide, the Floyds allege only that it directed the Floyds to apply for the loans, and that it was identified as the Lender or beneficiary in the Deed of Trust.  Dkt. 38 at ¶¶ 8-12.  The Floyds allege there is no record of any assignment of Countrywide's beneficial interest in the Deed of Trust to any other entity, and that in the Notice of Trustee's Sale ReconTrust failed to

identify Countrywide as the original beneficiary under the Deed of Trust. Dkt. 38 at ¶ 47.(a) and (f). Therefore, there are no allegations of facts plausibly indicating that Countrywide itself engaged in any conduct that would support the imposition of liability against it under any of the eight causes of action pled by the Floyds. The motion to dismiss should be granted as to Countrywide.

Similarly, the Floyds have pled limited factual allegations with respect to Defendants Thornburg Mortgage Securities Trust 2007-3 and Thornburg Mortgage Securities Trust 2006-6. As to Thornburg 2007-3, the only factual allegations are that <u>after</u> Renascent filed for bankruptcy Thornburg 2007-3 filed a Proof of Claim in that bankruptcy proceeding asserting it was the entity to which the secured debt was owed. Dkt. 38 at ¶ 24. But those factual allegations are insufficient to support any of the asserted causes of action against Thornburg 2007-3. In particular, Thornburg 2007-3's Proof of Claim occurred after the Floyds' alleged acts of detrimental reliance in their misrepresentation claims. Finally, the Floyds allege ReconTrust failed to identify Thornburg 2007-3 in the Notice of Trustee's Sale as the beneficiary under the Deed of Trust. Dkt. 38 at 47.(e). But again, this allegation does not describe conduct committed by Thornburg 2007-3 exposing it to liability.

The Floyds' allegations against Thornburg Mortgage Securities Trust 2006-

6 do not fare any better. The Floyds allege only that on July 8, 2011, Defendant Bank of America, NA identified Thornburg 2006-6 as the owner of the debt. Dkt. 38 at 25. Thus, the Floyds' allegations do not plausibly identify any act or omission committed by Thornburg 2006-6 that would subject it to liability. The motion to dismiss should be granted as to the two Thornburg entities.

But the Floyds' allegations against Defendant Mortgage Electronic Registration Systems, Inc. (Registration Systems) are sufficient to at least state a plausible claim for negligence. The Floyds allege that Registration Systems is inconsistently identified in the Deed of Trust as the nominee of the lender, the beneficiary, and "the holder of legal title[,]" i.e. the trustee under the Deed of Trust.[5] Dkt. 38 at ¶¶ 12 and 47.(g). Consequently, the Floyds allege the Deed of Trust unlawfully identified Registration Systems as both the beneficiary and the trustee, positions it cannot legally hold simultaneously. *See* Mont. Code Ann. § 71-1-303(1) (prohibiting beneficiary from being the trustee). *See also Joseph v. Bank of America Corp.*, 2012 WL 2804859, *10 (D. Mont. 2012) (concluding Registration Systems does not qualify as a "beneficiary" under the Financing Act,

---

[5]The party holding "legal title" is the trustee. *See* Mont. Code Ann. § 71-1-303(7) (defining the trustee as the person or entity who, under a trust indenture, holds "legal title" to the real property securing the debt). *See also Joseph v. Bank of America Corp.*, 2012 WL 2804859, *10 (D. Mont. 2012) (concluding that because Registration Systems was identified as the entity that holds "legal title" it was thereby designated as the trustee).

and that a beneficiary cannot also serve as a trustee under the Financing Act),

affirmed by *Joseph v. Bank of America N.A.*, 2012 WL 6100037, *1-2 (D. Mont.

2012). The Floyds assert that in view of its unlawful position as the beneficiary,

Registration Systems wrongfully purported to assign its beneficial interest in the

Deed of Trust to another party, thereby nullifying the assignment. Dkt. 38 at ¶

47.(h). The Floyds also allege that in assigning "its" beneficial interest it

wrongfully acted on its own behalf, and it did not properly act as the agent of

Countrywide. Dkt. 38 at ¶ 47.(I). *See cf. Joseph v. Bank of America N.A.*, 2012

WL 6100037, *2 (D. Mont. 2012) (concluding that Registration Systems can serve

as the beneficiary's agent).

Taken as a whole, the Floyds' allegations against Registration Systems are

sufficient to state a claim for relief. The factual allegations plausibly support a

claim of negligence based upon either common law or upon a violation of the law

under the Financing Act.

Finally, the Floyds assert very limited allegations against Defendant Bank

of America, NA. They allege only that on July 8, 2011, Bank of America, N.A.

identified "Wells Fargo (Thornburg 2006-6)" as the entity that owned the debt.

Dkt. 38 at ¶ 25. This allegation does not present any facts on which Bank of

America, N.A. could be held liable under any of the causes of action of pled by the

Floyds. Specifically, in view of the date of this alleged conduct which occurred

after any of the Floyds' alleged acts of detrimental reliance pled in support of their claims of misrepresentation, it factually cannot support those acts of detrimental reliance. Thus, Bank of America, N.A. is subject to dismissal.

Nonetheless, Defendant Bank of America, N.A. identifies itself in its brief as the successor by merger to the interests of BAC Home Loan. Therefore, as a result of that merger it is possible that Bank of America, N.A. may have assumed any liabilities of BAC Home Loan. Therefore, Bank of America, N.A. should be dismissed without prejudice to allow the Floyds, if possible, to amend their pleading to add factual allegations establishing Bank of America, N.A.'s liability for BAC Home Loan's conduct.

## IV. CONCLUSION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion be GRANTED in part. The Floyds' claims for implied private rights of action under the Financing Act, for negligent misrepresentation, constructive fraud, and deceit, and their claims for breach of contract, with the exception of their claim for a breach of the implied covenant of good faith and fair dealing, should be DISMISSED.

Furthermore, Defendants Countrywide, Thornburg 2007-3, and Thornburg 2006-6 should be DISMISSED. Defendant Bank of America N.A. should be

DISMISSED without prejudice.

Defendants' motion should be DENIED in all further respects.

DATED this 12th day of March, 2013.

Jeremiah C. Lynch
United States Magistrate Judge